IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIMBERLY BYRD ESTATE** : | CIVIL ACTION |
| **Kimberly Byrd as trustee, Mortgagor,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | NO. 24-1063 |
| : | |
| **NATIONSTAR MORTGAGE, LLC, et al.,** : | |
| : | |
| Defendants. : | |

**Perez, J.**                                                                                       November 13, 2025

# MEMORANDUM

This case comes before this Court on the Motion to Dismiss the Second Amended Complaint filed by Defendants Nationstar Mortgage, LLC ("Nationstar"), Wilmington Savings Fund Society as Trustee for A&D Mortgage Trust 2023-NQM4, and A&D Mortgage, LLC ("A&D"). ECF No. 79. In the Second Amended Complaint ("SAC"), Pro se Plaintiff Kimberly Byrd, as Trustee of the Kimberly Byrd Estate, seeks, *inter alia*, actual, statutory, and punitive damages, as well as a court order enjoining Defendants from foreclosing on her home or collecting payments on her mortgage. *See* ECF No. 77 at 6. Her claims are predicated on assertions that Defendants failed to notify her of certain changes to her mortgage loan. But Plaintiff has not pled she suffered any harm, adverse effects, or other downstream consequences as a result of the alleged nondisclosures. Thus, she has not established standing to sue, and the SAC must be dismissed.

**I.       Background**

Plaintiff executed a mortgage loan with A&D on September 22, 2023, for $437,850. ECF No. 77 at 2. At some point, Plaintiff defaulted on her loan, and Nationstar began servicing the loan without providing "notice of the change in ownership or beneficial interest." *Id.* at 2. Plaintiff

1

attached a forensic audit (the "Audit") to the SAC, which was seemingly performed by Steven Bernstein, a Certified Mortgage Securitization Auditor and Bloomberg Specialist. *See id.* at 38–39.[1] Plaintiff contends the Audit shows that on October 1, 2023, the loan was securitized into A&D Mortgage Trust 2023-NQM4. *Id.* at 19. But Defendants did not disclose this securitization. *Id.* at 2. Plaintiff alleges that "[t]he failure to disclose securitization, the trust structure, and transfer of ownership materially misled Plaintiff and deprived her of statutory rights." *Id.* Plaintiff also alleges the mortgage note was improperly recorded and that no valid chain of assignment exists to give Defendants the right to collect on the loan or initiate foreclosure proceedings. *Id.*

Plaintiff initiated this action on March 14, 2024. ECF No. 1. After Defendants moved to dismiss, ECF No. 13, Plaintiff filed an amended complaint on July 17, 2024, ECF No. 35. Upon motion by Defendants, ECF No. 46, this Court dismissed the amended complaint because Plaintiff did not (1) sufficiently allege Defendants were debt collectors under the FDCPA, (2) sufficiently allege Defendants intentionally misled her or that she justifiably relied on their misrepresentations, or (3) identify specific statutory provisions or state laws that were violated. ECF No. 74. The Court granted Plaintiff leave to amend, *id.*, and she filed the SAC on April 7, 2025, ECF No. 77.

The SAC raises eight claims: (I) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2) and 1692f(1); (II) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641; (III) violation of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639; (IV) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605(b) and (k)(1)(C); (V) violation of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2), and Rule 10b-5, 17 C.F.R. § 240.10b-5; (VI) fraudulent misrepresentation;

---

[1] The Court notes that the affidavits in the Audit bearing Mr. Bernstein's name are unsigned. *See id.*

2

(VII) civil conspiracy; and (VIII) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(4).

On April 24, 2025, Defendants moved to dismiss the SAC. ECF No. 79. Plaintiff filed a brief in opposition on May 5, 2025. ECF No. 80. On October 15, 2025, Plaintiff filed a document titled "Judicial Notice and Declaration of Non-Evidence in Support of Opposition to Motion to Dismiss," wherein she asserts Defendants have not submitted evidence showing they own or have rights to service the loan. ECF No. 81.

## II.     Applicable Law Governing Standing

The power of federal courts to decide matters before them is limited to only those which involve actual "Cases" and "Controversies." U.S. Const. art. III, § 2. A plaintiff must, therefore, demonstrate she has standing, or a "personal stake" in the case—in other words, she "must be able to sufficiently answer the question: What's it to you?" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted). To establish standing at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each of three elements: (1) injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff "must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation modified).

At issue here is the first element—injury in fact. To establish injury in fact, a plaintiff must show "she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* (citation omitted). And a concrete injury is one that "actually exist[s]." *Id.* at 340. Certain statutory violations may create an injury in fact absent

actual damages. *See St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (holding violation of 15 U.S.C. § 1692f(8), which prohibits exposure of debtor's account number in glassine window of envelope, confers standing absent additional harm because such exposure is akin to an invasion of privacy). But "an alleged procedural violation manifests concrete injury [only] if the violation actually harms or presents a material risk of harm to the underlying concrete interest." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 112 (3d Cir. 2019) (citation modified). Four recent cases define the contours of the concrete injury requirement as relevant to Plaintiff's claims—*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), *Kelly v. RealPage Inc.*, 47 F.4th 202 (3d Cir. 2022), *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023), and *George v. Rushmore Service Center, LLC*, 114 F.4th 226 (3d Cir. 2024).

*TransUnion* clarified the test for determining whether a plaintiff has suffered a concrete injury: "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." 594 U.S. at 417. Applying this principle, *TransUnion* found that, even though Congress had created a private cause of action for individuals to sue for violations of the Fair Credit Reporting Act (FCRA), plaintiffs whose credit information contained errors had not established they suffered concrete harm because the incorrect information was never disseminated to potential creditors. *Id.* at 439. The Court explained that federal courts have an independent responsibility to determine whether a plaintiff has established standing, even where Congress has created a statutory cause of action. *Id.* at 426. This is so because "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427.

4

The Third Circuit then considered what a plaintiff must show to establish standing based on an informational injury, or an injury that stems from a plaintiff not "receiv[ing] information to which she is legally entitled." *Kelly*, 47 F.4th at 211 (citation modified). To establish standing based on an informational injury, a plaintiff must show "(1) the omission of information to which [she] claim[s] entitlement, (2) 'adverse effects' that flow from the omission, and (3) the requisite nexus to the 'concrete interest' Congress intended to protect." *Id.* at 214. In *Kelly*, the plaintiffs had established informational injury because (1) the defendant did not disclose information they were required by the FCRA to disclose, (2) the plaintiffs were denied apartments because of the failure to disclose, and (3) the failure to disclose frustrated Congress's goal under the FCRA to allow consumers to correct errors in their credit files. *Id.* at 214–15.

*Huber* next considered whether a plaintiff established standing to sue under the FDCPA. There, the Third Circuit declined to extend the informational injury doctrine to include "failure[s] to disclose *clearly and effectively*." 84 F.4th at 146. Because the plaintiff did not allege the defendant "omitted information to which she was entitled, she did not suffer an informational injury." *Id.* Nonetheless, the Third Circuit found that the plaintiff had established standing under traditional standing principles. *Id.* It found her alleged injury—bearing the cost of hiring a financial adviser and failing to pay down her debts—were "sufficiently similar to the kind of harm protected by the tort of fraudulent misrepresentation"—the closest common law analogue to claims of false, deceptive, or misleading representations under the FDCPA. *Id.* at 147–49. In making this comparison, the Court noted that a plaintiff raising a claim under the FDCPA must establish more than "confusion alone"; she must identify "a consequential action or inaction" based on the representation made by the debt collector. *Id.* at 141, 149.

5

Finally, *George* considered whether a debtor who received a letter from a debt collector had standing to sue under §§ 1692e and 1692f of the FDCPA. 114 F.4th at 231. The letter allegedly "failed to identify 'the name of the creditor to whom the debt [was] owed' as required by law" and was, therefore, "false, deceptive, or misleading'" and "unfair or unconscionable." *Id.* at 231 (alteration in original) (quoting 15 U.S.C. §§ 1692e and 1692f). Though the debtor received and reviewed the letter, she alleged no consequences as a result of that receipt and review. *Id.* at 231–32. The fact that the letter was "confusing" was insufficient to confer informational standing because the debtor alleged no "adverse effects" that flowed from the omission of information. *Id.* at 232, 236 ("Nothing in the complaint indicates that [the debtor] could not pay her debt as a result of the letter, that the omission caused downstream financial consequences, or that [she] suffered distress."); *see also id.* at 236 n.12 (noting that the filing of a lawsuit alleging FDCPA violations "cannot constitute an adverse effect"). Further, without some cognizable harm flowing from the receipt of a misleading representation, the plaintiff could not establish a traditional injury sufficient to confer standing. *Id.* at 236–37 ("[T]he mere receipt of a misleading statement, or even confusion, without any further consequence" is insufficient.).

### III.     Plaintiff's Standing

Plaintiff's claims revolve around certain misrepresentations or omissions by Defendants. Applying the above principles, it is clear the SAC does not establish either informational or traditional injury sufficient to confer standing for any of Plaintiff's claims.

#### A.     Counts I–IV: FDCPA, RESPA, TILA, and HOEPA Claims

Plaintiff asserts that "Nationstar violated §§ 1692e and 1692f [of the FDCPA] by falsely representing its authority to collect," and that it violated RESPA by failing to notify her of a

6

servicing transfer.[2] ECF No. 80 at 3; *see also* ECF No. 77 at 3–4. She further alleges that Defendants failed to notify her of a loan transfer in violation of TILA and failed to provide mandatory disclosures after securitization of her loan in violation of HOEPA.[3] ECF No. 77 at 3–4. The only injury she pleads with respect to these claims is a deprivation of her statutory rights. ECF No. 77 at 2.

Though Congress has created a private cause of action under the FDCPA, RESPA, TILA, and HOEPA, Plaintiff has not pled facts to show she was harmed by the alleged statutory violations. Plaintiff fails to establish informational injury because she has not pled any adverse effects or downstream consequences flowing from the Defendants' failures to disclose the information. *See Kelly*, 47 F.4th at 214.

Furthermore, Plaintiff's claims, which are based on Defendants' misrepresentations or omissions, are most analogous to common law fraud or negligent misrepresentation. *See George*, 114 F.4th at 237; *see also Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020). Traditionally, common law misrepresentation torts have required the plaintiff to establish

---

[2] The FDCPA, 15 U.S.C. §§ 1692e and 1692f, creates a private cause of action where a debt collector uses false or misleading representations and unfair practices in connection with the collection of debt. To state a claim under the FDCPA, a plaintiff must allege facts showing "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021).

RESPA, 12 U.S.C. § 2605(k)(1)(C), requires a mortgage servicer to timely take action in response to a borrower's request to correct errors. Section 2605(b), requires a mortgage servicer to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person" within 15 days of the transfer. "[I]n order to bring a claim under RESPA, a plaintiff 'must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605.'" *Giordano v. MGC Mortgage, Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016) (citation omitted); see also 12 U.S.C. § 2605(f).

[3] TILA, 15 U.S.C. § 1641(g), requires a new owner or assignee of debt to notify the borrower in writing that the debt was transferred within 30 days. HOEPA, 15 U.S.C. § 1639, requires a lender to provide loan origination disclosures, including that the borrower could lose their home if they default on the loan and the annual percentage rate and amount of monthly payments. It further requires lenders to provide new disclosures if the terms of the extension of credit change such that the original disclosures become inaccurate. 15 U.S.C. § 1639(b)(2).

justifiable reliance and actual damages. *Trichell*, 964 F.3d at 998 (citing Restatement (Second) of Torts, §§ 525, 552 (1977); and Restatement (First) of Torts, §§ 525, 552 (1938)). Without allegations establishing justifiable reliance or resulting damages, claims of misrepresentations under federal statutes have no relationship to harms courts have traditionally recognized as actionable. *See id.*; *see also TransUnion*, 594 U.S. at 424. Plaintiff has not alleged she relied on any misrepresentation by Defendants or that she suffered damages as a result. Thus, her claims do not bear a close relationship to common law fraud or negligent misrepresentation claims, and she has not established a traditional injury for standing purposes.

### B. Securities Act Claims

Plaintiff's Securities Act claims also fail. She invokes 15 U.S.C. § 77q(a)(2) and Rule 10b-5 but does not have standing to sue under either. Plaintiff cannot bring a cause of action under 15 U.S.C. § 77q(a)(2), because there is no private right of action. *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989); *Newcome v. Esrey*, 862 F.2d 1099, 1101 (4th Cir. 1988) (en banc); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987) (en banc); *Deviries v. Prudential-Bache Secs., Inc.*, 805 F.2d 326, 328 (8th Cir. 1986); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993); *Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992); *Degen v. Bunce*, No. 93-5674, 1995 WL 120483, at *4 (E.D. Pa. Mar. 13, 1995).

Plaintiff also cannot sue under Rule 10b-5 because she does not allege she bought or sold any securities. Rule 10b-5 prohibits the use of fraudulent means or false statements of material fact in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5. A private right of action does exist under Rule 10b-5, but it may only be brought by "actual purchasers and sellers of securities." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975). Plaintiff

alleges Defendants placed her mortgage in a trust and did not disclose that information to her. She does not allege she bought or sold interest in any security from Defendants.

Furthermore, Plaintiff does not establish she suffered any harm stemming from the securitization of her loan and subsequent nondisclosure. She does not plead facts showing she took any acts in reliance on Defendants' failure to disclose that her mortgage was placed in a trust, nor does she allege the nondisclosure caused her to suffer any adverse effects or downstream consequences. Thus, she has not established standing to bring her Securities Act claims.

### C. Fraudulent Misrepresentation

Like Plaintiff's FDCPA claims, she fails to establish she has standing to bring a fraudulent misrepresentation claim because she does not plead facts showing she suffered any concrete injury. She contends only that Defendants misrepresented ownership of the loan and failed to disclose assignment information. She alleges no acts she took in reliance on those alleged misrepresentations or omissions or any resulting harm. To establish standing for the tort of fraudulent misrepresentation, the "claimant must suffer some cognizable harm that flows from" the false statement of fact. *Huber*, 84 F.4th at 149. In other words, she must identify "a consequential action or inaction" she took in reliance on the false statement. *Id.* Plaintiff has identified no "consequential action or inaction" she took in reliance on Defendants' misrepresentations and omissions. Therefore, she has not established standing for a fraudulent misrepresentation claim.

### D. Civil Conspiracy

Similarly, Plaintiff does not have standing to pursue a civil conspiracy claim based on the allegations in the SAC. She baldly asserts Defendants deprived her of "due process, transparency, and remedies" and caused her "economic harm, reputational damage, litigation costs, and emotional distress." ECF No. 77 at 5. These assertions "are no more than conclusions" and "are

9

not entitled to the assumption of truth." *Dervitz v. ARS Nat'l Servs. Inc.*, No. 22-3090, 2024 WL 1173739, at *4 (3d Cir. Mar. 19, 2024); *Filgueiras v. Midland Funding, LLC*, No. 16-3037, 2025 WL 2637171, at *6 (D.N.J. Aug. 22, 2025) ("[S]parsely identified alleged harm is insufficient to confer standing.").

### E. UTPCPL

Likewise, Plaintiff does not have standing to pursue her UTPCPL claim because she alleges no injury stemming from any misleading or deceptive representations made by Defendants. The UTPCPL does not allow for statutory damages absent an ascertainable loss of money or property. 73 P.S. § 201-9.2(a). Plaintiff alleges she was misled by Defendants into believing they "had authority to collect payments and enforce the mortgage, when in fact neither party had standing due to the unrecorded or invalid assignment chain." ECF No. 77 at 5. She contends these were deceptive practices in violation of 73 P.S. § 201-2(4). But again, mere confusion is not enough, and Plaintiff does not plead she took any actions in reliance on those false representations that caused her concrete harm.

## IV. Conclusion

Because Plaintiff has not established even "a trifle of injury" stemming from the alleged conduct by Defendants, this Court lacks jurisdiction to reach the merits of Plaintiff's claims. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014). The Court shall allow Plaintiff one more opportunity to cure the defects in the SAC. *See Cottrell v. Alcon Laboratories*, 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper.").

An appropriate Order follows.